# FILED

JUN 2 0 2008  T C
6-20-2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**Plaintiff(s)**

BOBBIE WARREN                              **Case No.**    08 C 1381

**V.**

**Defendant(s)**

AARP et al            **AMENDED COMPLAINT**

**To the United States District Court
for the Northern District of Illinois
Eastern Division:**

**Re:**  AARP Long Term Care Insurance Plan
        Group No. 009444 - Member No. 0944156671

        Again, I apologize to this Honorable Court for
appearing pro se.  Thank you, for the opportunity granted to
amend my complaint.  Overwhelmed by the enormity of complica-
tions even legal minds require (knowledge, research, etc.,),
respectfully, I offer my best clarification of facts to
present my case.

I.  November 12, 2007 letter terminating benefits based
    on activities of daily living criteria from Ms. Linda
    Lanzo (attached).

RESPONSE:            In August 2007, early in the process, I
             asked service providers to put, "in writing"
             prior to their outside agency contractor's
             visit to my home what they wanted to assess.
             Stipulations were never submitted for my primary
             doctor's collaboration.

        Although the application process started with my doctor, I
was told by a third phone caller introducing herself as "the
manager:"
            "Oh, he has nothing to do with this."

        Approximately two weeks later, depressed and torturously
pained, having a really hard time alone trying to take care of
myself, my primary doctor and Community Care Center collaborated
my care as patient at the nursing home, 43rd and Wabash Avenue,
Chicago, IL. The Administrator asked if I wanted MetLife's
representatives to "assess my daily needs there or in my home
home;" I granted permission, with Center staff being present.
I was told  Met's representatives never responded.

        I received physical therapy there.   Plans were pending to
transport me to another facility for more physical therapy
when I received Met's letter of November 12, 2007.
**RE:  NOV. 12, 2007 letter** (by Ms. Linda Lanzo) **Concurrent Review**
RESPONSE: 1.  At no time was I included in a review, nor
             anyone acting in my behalf with my permission.
          2.  I had no discussion of "ongoing eligibility

              for benefits" with anyone; not an understand-

              ing of; nor did anyone acting in my behalf.

P.O. Box 937
Westport, CT 06881-0937

**FILED-6**    **MetLife**

November 12, 2007

**2008 APR 14 PM 12: 44**

CIRCUIT COURT OF COOK
COUNTY, ILLINOIS
LAW DIVISION

Bobbie Warren
Apt 301
4120 S Indiana Ave
Chicago, IL 60653-2168

CLERK
DOROTHY BROWN

Group Name:      AARP
Group Number:   0094444
Membership No: 0944156671

Dear Ms. Warren:

I have performed a Concurrent Review to determine your ongoing eligibility for benefits. Based on the criteria we employ for this assessment, you are no longer eligible for continued benefits. The information we received does not indicate that you require human assistance each time you attempt to perform at least 2 Activities of Daily Living (ADLs) as defined in your Certificate of Insurance, or that you would require an inpatient stay in a nursing home if home health care services were not provided.

Under the Activities of Daily Living criteria, you would become eligible for benefits when you need help from another person with at least two activities of daily living and it is expected that you will continue to need that help for at least 90 days. According to the information I have obtained, you need help with Transferring, but it is not expected that you will continue to need this help for at least 90 days.

You have the right to appeal this decision. If you and/or your representative feel that our decision was based on incomplete information, or that there are other reasons for us to reconsider this decision, please provide us with additional information within 60 days of the date of this letter. A Benefit Authorization Appeal Form is enclosed for your physician to complete and return to us at the address indicated on the form.

This additional information, along with your entire record, will be re-evaluated by someone other than myself and you will be notified of the appeal decision in writing.

If you or your representative have any questions regarding this decision or the appeal process, you may contact me at 1-800-638-9641, extension 3837 Monday through Friday, 9:00 a.m. - 5:00 p.m., Eastern Time.

Sincerely,

*Linda J Lanzo, RN, CCM*

Linda Lanzo RN CCM
Nurse Care Manager
Benefit Administration Department
CM20C

MetLife is a proud provider to    **AARP** Health Care Options®

II.  AARP - CERTIFICATE & SCHEDULE OF BENEFITS                    -2-
(Attached)    DEFINITIONS (Form G.LTC4698)

Activities of Daily Living (page 1)

1.  Bathing:  Washing oneself by sponge bath; or in either a
    tub or shower, including the task of getting in or out
    of tub or shower.

RESPONSE:  I need assistance in and out of the tub.  Also,
    cleaning the tub (cannot bend/stoop).

2.  Dressing:  Putting on and taking off all items of
    clothing and any necessary braces, fasteners, or
    artificial limbs.

RESPONSE:  I need a lot of help dressing, daily.  My
    thumbs are completely disabled.  Without thumbs,
    your hands are almost useless buttoning, zipping,
    pulling up stockings, etc.  Stooping down with a
    sciatic-painful back is a nightmare, with thumbs
    hurting, feeling unhinged.

    All I asked the service provider to do was to put "in
writing" what the outside-agency contractor was to assess
prior to the visit in my home for my doctor's collaboration.
It would have avoided unnessary confusion and so much of the
pain and suffering I am enduring by their unfair denial of
the benefits I am due.

3.  Transferring:  Moving into or out of a bed, chair or
    wheelchair. (also Toileting)

RESPONSE:  Never said I needed either.  Their description
           is not for long-term care, but for predictable
           death (boxed-in descriptions; short-term care
           hospice, not "long" term care).

4.  Continence:  Ability to maintain control of bowel and
    bladder function; or, when unable to maintain control of
    bowel....

RESPONSE:  The fact that I can control my bowel and bladder
    has nothing to do with my overall daily need:
                "I can't take care of myself."

5.  Eating:  Feeding oneself by getting food into the body
    from a receptacle (such as a plate, cup or table) or by
    a feeding tube or intravenously.

RESPONSE:  (AARP/Met/Life's LTC Plan is not realistically
           for long-term care, but for invalids; hospice;
           near-death patients)
I need major help with food preparation; kitchen chores; washing
dishes; cleaning food, daily.  Can't peel a potato, apple,
turn or twist things.

# DEFINITIONS

**"AARP"** means American Association of Retired Persons.

**"Activities of Daily Living" ("ADL")** means any of the following:

- **Bathing:** Washing oneself by sponge bath; or in either a tub or shower, including the task of getting into or out of the tub or shower.

- **Dressing:** Putting on and taking off all items of clothing and any necessary braces, fasteners, or artificial limbs.

- **Transferring:** Moving into or out of a bed, chair or wheelchair.

- **Toileting:** Getting to and from the toilet, getting on and off the toilet, and performing associated personal hygiene.

- **Continence:** Ability to maintain control of bowel and bladder function; or, when unable to maintain control of bowel or bladder function, the ability to perform associated personal hygiene (including caring for catheter or colostomy bag).

- **Eating:** Feeding oneself by getting food into the body from a receptacle (such as a plate, cup or table) or by a feeding tube or intravenously.

**"Adult Day Care Center"** means a facility operated, licensed and/or certified as an Adult Day Care Center under the laws of the jurisdiction in which it is located; or other organization that satisfies all of the following:

- provides a program of adult day care; and

- maintains a written record of services provided to each client; and

- has established procedures to obtain emergency medical care; and

- is not a place predominantly providing services for recreation or social activities; and

- maintains a client-to staff ratio of 8 (or less) to 1 which staff includes a full-time director, 1 or more Nurses in attendance during operating hours at least 4 hours a day, and at least 2 staff members in attendance whenever clients are present.

**"Assisted Living Facility"** means a facility (including Alzheimer's facilities) that satisfies all of the following:

- maintains all appropriate licensing required under the laws of the jurisdiction in which it is located to provide Maintenance or Personal Care; and

- provides 24-hour a day care and services sufficient to assist clients with needs which result from the inability to perform Activities of Daily Living or Severe Cognitive Impairment; and

- whose residents are not related to the owner or manager of the facility; and

- has a minimum of 6 residents; and

- uses aides trained or certified to provide Maintenance or Personal Care in accordance with any laws applicable to the provision of such care; and

- provides 24 hour supervision of clients by a trained and awake staff; and

- has formal arrangements for emergency medical care; and

- maintains written records of services provided to each client; and

- provides clients with 3 meals a day; and

- has appropriate methods and procedures to assist in administering prescribed drugs where allowed by law.

It is not other than incidentally a hotel, motel, a place for rest or a place for drug addicts or alcoholics. Retirement homes, congregate living, senior housing, or other facilities  primarily intended to provide residential services but not Maintenance or Personal Care do not typically qualify as an Assisted Living Facility.  If an institution has multiple licenses or purposes, only that section of the institution specifically meeting the definition of Assisted Living Facility will qualify as an Assisted Living Facility.

**"Bed Reservation Benefit"** means the Benefit payable toward charges You incur to reserve accommodations in a Nursing Home, Hospice, or Assisted Living Facility if, while confined in such institution, You are transferred to a Hospital for acute care on a short term basis.

**"Benefits"** means the amount We will pay for a Covered Service.

**"Calendar Year"** means a period starting on any January 1 and ending the next December 31.

**"Care Advisor"** means a health care professional from a Care Management Organization.

**"Care Advisory Services"** means the following services performed by a Care Advisor:

- assessing long-term care service needs;

- developing a long-term care service plan;

- requisitioning and coordinating long-term care services;

## III.   RIGHT TO APPEAL                                    -3-

     Based upon my experiences with AARP/MetLife, I
cannot trust appeal procedures.  I am suffering enough,
and pray that this will all end soon, before it is too late.
I am almost 79 years old and hardships I am enduring are
worsening.  So are my health conditions; also affecting
my family.

## IV.   DISSERVICE

### Failure to Provide Services
     The Defendants robbed me of self-sufficiency,
     independence, individuality, dignity, privacy,
by causing me to vacate my home and community when it would
have been so simple to honor my request, simply, to "put
what you want to assess in writing prior to your home visit
for my doctor's collaboration."

The respect that I was due was not given which would have
avoided confusion, instead of causing professional malpractice.
There was never an opportunity for a bonded agreement.

*Bobbie Warren*
BOBBIE WARREN


## V.   LIABILITIES STATEMENT

     1.   All court costs, travel/travel companion fees.

     2.   Long Term Care full-life benefits

     3.   Referral to and collaboration with Mayo Clinic
          via referrals by primary Dr. David Buyer
          1)   diagnoses of illness and diseases
          2)   evaluation via Dr. Buyer's collaboration
          3)   treatment/and/or therapy
          4)   followup (until death) via primary physician

     4.   Home displacement/Home reestablishment (with on-site
                    physical therapy & domestic services)

     5.   Family financial reimbursements
          (I have 4 daughters with whom I will have to reside
          with for short periods of time.)

                         TOTAL AMOUNT: $12,156,000

*Bobbie Warren*
BOBBIE WARREN

## BENEFIT AUTHORIZATION APPEAL FORM

**TO THE PHYSICIAN:**

Please Complete and Return to:

MetLife Long-Term Care
Benefit Administration Department
P. O. Box 937
Westport, CT   06880-0937
Fax:  203-221-3842

Name of Patient:_____ Date of Birth.:_____

New or Added
Information:_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Please attach copies of any pertinent lab data, X-ray reports, etc.**

Name of Physician:_____

Address:_____

_____

Telephone No.:(_____) _____-_____

Physician signature:_____ Date:_____

MetLife is a proud provider to